## WILLIAMS v. PERKINS DRY GOODS CO.
### (No. 6815.)

(Court of Civil Appeals of Texas. Austin. Nov. 19, 1924.)

**1. Trial ⬦350(2)—Refusal to submit special issue not requiring finding of ultimate fact not error.**

Refusal of special issue not submitting ultimate fact *held* not error, in view of the evidence.

**2. Sales ⬦359(2)—Evidence as to price held to support verdict based on price at date of shipment.**

In action for price of goods, evidence *held* to support verdict based on market price at date of actual shipment.

**3. Appeal and error ⬦1003—Verdict not disturbed, unless overwhelming preponderance of evidence against it.**

Verdict will not be disturbed, unless there is such an overwhelming preponderance of evidence against it as to impel conclusion that jury was actuated by some consideration other than arriving at facts in issue.

Appeal from Comanche County Court; F. J. Reese, Judge.

Action by the Perkins Dry Goods Company against C. F. Williams. From a judgment for defendant, plaintiff appeals. Affirmed.

Callaway & Callaway, of Comanche, for appellant.

Y. W. Holmes, of Comanche, for appellee.

McCLENDON, C. J. This was a suit by Perkins Dry Goods Company against .C. F. Williams for balance due upon account for merchandise. From a judgment in favor of defendant upon a special issue verdict, the plaintiff has appealed upon two assignments of error, the first of which complains of the trial court's refusal of a special issue, and the second of the sufficiency of the evidence to support the verdict.

The petition alleged, in substance, that the goods were purchased under unsigned orders taken by plaintiff's traveling salesman, which provided that the prices prevailing at the date of the orders should govern, but that there was a custom under which plaintiff gave to its customers the benefit of price reduction at the time of shipment, and the amounts alleged were the prices at the date of shipment.

Defendant's answer, in addition to a general denial, alleged that he ordered the goods under a distinct understanding with plaintiff's salesman, Mr. Sturgess, that they were not to be shipped until October 1, 1920, and with the further understanding that the price prevailing at the time of shipment should govern; that in violation of this agreement the goods were shipped in August, 1920, at which time the prices were higher.

than on October 1, 1920, by $195.05 as itemized in the answer. Defendant thereupon claimed a reduction by that amount from the sum sued for, besides a small item of interest.

The court submitted to the jury the following special issue which was the only issue answered by them: "Did the plaintiff agree to ship the defendant goods on prevailing prices for such goods on October 1, 1920?" To which the jury's answer was "No."

Defendant's special issue, which the court refused, follows: "Did the plaintiff agree with the defendant to withhold the shipment of the goods in controversy sold to defendant until on or after October 1, 1920?"

The evidence having bearing upon the question presented by the refusal of this special issue is found in the testimony of defendant and his wife.

Defendant testified that when he ordered the goods he told Mr. Sturgess that he did not want them shipped until after October first; that most of the goods consisted of percales and ginghams, and he wanted to go to Dallas and select the patterns at the plaintiff's annual sale the latter part of September, before the shipments were made; and that he would not order unless permitted to do this, "and unless the company would give me the advantage of such reduction on the price of the goods as prevailed at the time they agreed to ship them to me, that is, on October 1. He agreed that he would do this"; that he kept the goods and used them, "but I expected the company to let me have them at the prices prevailing for such goods on October 1, as Mr. Sturgess had agreed with me they would do."

On November 6, 1920, defendant wired plaintiff:

"As per agreement with your salesman * * * I was to have the goods at the prevailing price on October first and I expect to stand on the contract."

Mrs. Williams testified that she was present when the orders were taken; that she remembered—

"We had the agreement with Mr. Sturgess that these invoices of goods would not be sent out to us until we had a chance to visit the company's house in Dallas and select the patterns. We intended to go down to Dallas and select the patterns at a sale they hold down there and held that year during the latter part of September. Mr. Sturgess agreed with us that he would not ship the goods out to us until after we had visited the company's house, but they shipped them on out to us anyway during July and August. We expected him to give us advantage of the prices prevailing at the time he agreed to make the shipments."

Mr. Sturgess denied having made the agreements above testified to other than that defendant should have the benefit of any price reductions at the time of actual shipment.

[1] Defendant contends that there was no controversy raised by the evidence except whether Mr. Sturgess agreed not to make shipment before October 1st; and that this was the ultimate fact at issue which should have been submitted to the jury. With this contention we cannot concur. According to the testimony of defendant and his wife, there was an agreement not to ship until October 1st for two reasons: First, in order to give defendant the opportunity to attend the September sale and select the patterns; and, second, to get the benefit of any price reduction. When defendant accepted the shipment as made, the matter of selecting the patterns was waived and became immaterial, and the only issue remaining was whether defendant' was entitled to the price reduction claimed. His testimony was positive and specific to the effect that Mr. Sturgess agreed that the prices prevailing "at the time they agreed to ship them to me, that is, on October 1," should govern. His telegram is equally positive:

"I was to have the goods at the prevailing price on October first and I expect to stand on the contract."

Mrs. Williams thus expresses her understanding of the negotiations:

"We expected him to give us the advantage of the prices prevailing at the time he agreed to make the shipment."

The ultimate fact and only material fact at issue was that submitted by the court and answered by the jury adversely to defendant.

[2] The assignment of error questioning the sufficiency of the evidence to support the jury's finding is to the effect that as against the positive testimony of defendant and wife the witness Sturgess testified "that it was his custom not to make such agreements with buyers as the agreement claimed to have been made with defendants, and that he did not remember definitely whether he made this agreement with defendants or not, but that he did not think he did. There was a clear preponderance of the evidence in favor of defendant, and the jury rendered a verdict wholly contrary thereto in spite of such evidence."

The assignment does not accurately set forth the testimony of this witness. We quote from his evidence as contained in the statement of facts:

"I have no personal recollection of what was said between Mr. Williams and myself, because I handle so many orders daily that it would be impossible for me to remember them, but it was the policy of the company to guarantee only their own prices at the time of shipment, and I know I did not agree the goods should be priced as of the prevailing prices for such

goods on October 1st, because I had no authority to make such an agreement and would have lost my job had I done so. I never made any such agreement with any of my customers, and know I made no such agreement with him. I am certain there were no instructions from Mr. Williams or agreement with him that any, all, or part of the goods were not to be shipped until he came to Dallas and selected the patterns, and there is no specification of the kind on any of these orders."

On cross-examination he testified:

"We did agree to let him have the goods at the prices prevailing at the time they were shipped to him, and we did do this, but we never agreed to withhold shipment until October 1st."

The evidence presents a clear-cut issue of fact as to what the agreement was between one interested witness on the one hand and two interested witnesses on the other, all equally credible so far as the record shows.

[3] The credibility of the witnesses and the weight to be given to their testimony are matters peculiarly within the province of the jury, and their verdict thereon should not be disturbed, unless there is such an overwhelming preponderance against it as to impel the conclusion that they were actuated by some consideration other than arriving at the true facts in issue, such as sympathy, bias, or prejudice. If there be a preponderance of evidence in favor of defendant, it is certainly not such as to authorize the Court of Civil Appeals to exercise its jurisdiction to set aside the verdict on that account.

In addition to questions raised by the assignments of error appellant asserts several propositions which he contends present fundamental error apparent upon the face of the record. These propositions are without merit, and require no discussion.

Finding no error in the record, the trial court's judgment is affirmed.

Affirmed.